## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| CURTIS L. JOHNSON, JR., | CASE NO. 1:23-CV-2368-PAB |
| Petitioner, | JUDGE PAMELA A. BARKER |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN ANGELA STUFF,[1] | **REPORT AND RECOMMENDATION** |
| Respondent. | |

### INTRODUCTION

Representing himself, Petitioner Curtis Johnson, a prisoner in state custody, applied for a writ of habeas corpus under 28 U.S.C. § 2254 on November 29, 2023. (ECF #1 at PageID 15). The District Court has jurisdiction under § 2254(a) and the matter was referred to me to prepare a Report and Recommendation. (Non-document entry of Dec. 21, 2023). On February 20, 2024, then-Respondent Warden Kenneth Black, as Warden of the Richland Correctional Institution (hereinafter, the State), filed the Return of Writ (ECF #6) with the state-court record (ECF #6-1). On March 26, 2024, Mr. Johnson submitted his Traverse. (ECF #7).

Mr. Johnson raises four grounds for relief challenging his conviction for murder. For the reasons below, I recommend the District Court **DISMISS** Grounds One and Two as procedurally defaulted, **DENY** Grounds Three and Four as meritless, and **DISMISS** the petition. I further

---

[1]     Angela Stuff replaced Kenneth Black as Warden of the Richland Correctional Institution. *See Richland Correctional Institution*, *Ohio Dep't of Rehab. & Corr.*, http://drc.ohio.gov/about/facilities/richland-correctional/ (last accessed Mar. 27, 2025). Under Fed. R. Civ. P. 25(d), I automatically substitute Warden Stuff as the proper respondent.

recommend the District Court **DENY** Mr. Johnson's requested certificate of appealability (COA)

on Ground One and **DENY** him a COA on all other grounds.

PROCEDURAL HISTORY

**A.**     **State court factual findings**

The Ohio Court of Appeals, Eighth Appellate District, summarized the facts here on direct

appeal. These factual findings are presumed correct unless Mr. Johnson offers clear and convincing

evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1). The Eighth District determined:

> {¶1} Curtis Johnson appeals multiple convictions arising from a shooting incident
> outside a local establishment in which Johnson was found guilty of murdering Catera
> Fowler. For the following reasons, we affirm.

> {¶2} Johnson and his codefendant Eric White attended a live musical performance
> at Legacy Nightclub, located on the corner of E. 103rd Street and Union Avenue in
> Cleveland, Ohio. Before the performance could begin, Johnson and White engaged
> in a physical fight. Fowler was with White's group and participated in the fisticuffs.
> The club cleared the building. Johnson exited the club, walked back to his car, and
> removed his sweatshirt in anticipation of the continued belligerence. Once outside,
> Johnson waited for White to exit the building.

> {¶3} As White exited with Fowler nearby, Johnson approached White in a manner
> suggesting he intended to continue fighting. White reached for and brandished a
> firearm with Fowler attempting to keep him from doing so. At that time, another
> unidentified individual fired shots into the air from the corner of the street. White
> and Fowler began running south down E. 103rd Street, past Johnson's car.

> {¶4} At the same time, Johnson took refuge behind his car, which was parked on E.
> 103rd Street, and retrieved his own firearm. Video depicts Johnson ducking behind
> the car, but it is unclear whether shots were actually fired in his direction. No one
> claims that any bullet defects existed in his vehicle. Johnson claims that White was
> chasing and shooting at him during this time.

> {¶5} Regardless, as White and Fowler ran past Johnson, heading south away from
> Johnson, Johnson began firing several shots at the fleeing couple. It was only after
> White and Fowler continued south that Johnson first began to fire in their direction.
> Although White and Fowler were no longer within the vantage point of the video
> camera, the state relied on the circumstantial evidence provided by the mechanism
> of Fowler's death. The fatal shot struck Fowler in the lower back, with evidence
> demonstrating that the shot came from Johnson's firearm. The bullet travelled

2

through Fowler's body, exiting Fowler's upper chest—meaning the bullet travelled at an upward trajectory, having been fired from a lower vantage point.

{¶6} There were other unidentified shooters on the street, but according to the state's evidence, those other shooters fired their weapons indiscriminately into the air.

{¶7} White and Johnson were separately charged and proceeded to trial for the murder of Fowler. Before Johnson's trial, White was acquitted. Johnson's jury trial resulted in convictions for murder in violation of R.C. 2903.02(A), along with a three-year firearm specification; felonious assault in violation of R.C. 2903.11(A)(2), a qualifying felony offense, along with a three-year firearm specification; discharge of a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3), along with a three-year firearm specification; and having weapons while under disability in violation of R.C. 2923.13(A)(2). The trial court imposed the underlying terms to be served concurrently but imposed two of the firearm specifications to be served consecutive to each other and the underlying sentences, for a stated prison term of 21 years to life imprisonment.

(ECF #6-1 at PageID 133-35 (footnotes omitted); *see also State v. Johnson*, No. 110673, 2022 WL 2981506, at *1 (Ohio Ct. App. July 28, 2022), *appeal not allowed*, 200 N.E.3d 1151 (Ohio 2023) (table)).

## B.    Direct appeal

On July 17, 2021, through new counsel, Mr. Johnson timely appealed his convictions to the Eighth District. (ECF #6-1 at PageID 78). He raised two assignments of error:

1.    The trial court erred by failing to instruct the jury on self-defense where Mr. Johnson retreated to his car while under gunfire and

2.    The trial court erred in denying Mr. Johnson's Ohio Criminal Rule 29 motion for acquittal when there was no evidence that Mr. Johnson caused the death of the victim or caused physical harm to the victim.

(*See id.* at PageID 90-92) (cleaned up). A divided panel of the Eighth District affirmed Mr. Johnson's conviction on July 28, 2022. (*See id.* at PageID 143-44). The dissenting judge disagreed on the first issue and would have concluded Ohio law entitled Mr. Johnson to a self-defense instruction. (*Id.* at PageID 148).

On September 12, 2022, through new counsel, Mr. Johnson appealed to the Supreme

Court of Ohio. (*See id.* at PageID 150). He advanced one proposition of law:

> In a criminal trial, where there is some evidence that the accused acted in self-defense, the trial court must instruct the jury that it is the prosecution's burden to disprove beyond a reasonable doubt that the accused used the force in self-defense before it may find him guilty.

(*Id.* at PageID 171). On January 17, 2023, the Supreme Court of Ohio declined to hear his appeal.

(*Id.* at PageID 188; *see also Johnson*, 200 N.E.3d 1151).

## C.      Application to reopen the direct appeal

While his application for a discretionary appeal to the Supreme Court of Ohio was

pending, on October 4, 2022, representing himself, Mr. Johnson applied to reopen his direct

appeal under Ohio Appellate Rule 26(B). (ECF #6-1 at PageID 189). There, he argued his

appellate counsel was ineffective for not raising three proposed issues on direct appeal:

> 1.      Mr. Johnson's Sixth Amendment right to have the jury decide the weight of the evidence and the credibility of the witnesses regarding his self-defense claim,
>
> 2.      Trial counsel's failure to seek a jury instruction on the lesser-included offense of manslaughter, and
>
> 3.      The trial court erroneously admitted over objection the State's video excerpts that labeled Mr. Johnson as the "shooter."

(*See id.* at PageID 191-93, 197-98) (cleaned up). In his reply to the State's opposition, Mr. Johnson

changed his third claim to:

> With respect to the actual issue raised in Appellee's [*sic*] Third Proposed Assignment of Error, Appellant specifically argues that the State failed to place any evidence before the jury, whether it was circumstantial or otherwise, of the required mens rea element of intent, to support a guilty verdict for murder.

(*Id.* at PageID 233). Mr. Johnson continued, "To that point, Appellant asks this Court to consider

the following with respect to Proposed Assignment of Error No. III," and argued whether an

involuntary-manslaughter instruction was appropriate. (*See id.* at PageID 233-34). On January 11, 2023, the Eighth District denied Mr. Johnson's application on the merits of all three claims as raised in the application. (*Id.* at PageID 237, 241-43; *see also State v. Johnson*, No. 110673, 2023 WL 169260 (Ohio Ct. App. Jan. 11, 2023), *appeal not allowed*, 208 N.E.3d 854 (Ohio 2023) (table)).

On February 24, 2023, representing himself, Mr. Johnson sought an appeal to the Supreme Court of Ohio. (ECF #6-1 at PageID 244). His memorandum in support of jurisdiction raised three propositions of law:

1.　　When appellate counsel fails to raise the complete lack of evidence of the element of intent regarding a murder conviction, appellant is denied the effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution

2.　　When appellate counsel fails to argue appellant's right to have a jury determine the issues regarding self-defense, appellant is denied effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 16 of the Ohio Constitution

3.　　When a jury is shown a video over the objections of trial counsel, that labels appellant as "the shooter" and appellate counsel fails to argue the prejudicial impact of that video on direct appeal, appellant is denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

(*See* ECF #6-1 at PageID 248, 251, 253, 256). On May 9, 2023, the Supreme Court of Ohio declined to hear his appeal. (*Id.* at PageID 267; *see also State v. Johnson*, 208 N.E.3d 854).

### FEDERAL HABEAS PETITION

Before this Court, Mr. Johnson raises four grounds for relief:

1.　　In a criminal trial, where there is some evidence that the accused acted in self-defense, the trial court must instruct the jury that is the prosecution's burden to disprove beyond a reasonable doubt that the accused used the force in self-defense before it may find him guilty.

5

2.  When Appellate counsel fails to raise the complete lack of evidence of the element of intent regarding a murder conviction, appellant is denied the effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

3.  When appellate counsel fails to argue appellant's right to have a jury determine the issue regarding self-defense, appellant is denied effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

4.  When a jury is shown a video over the objections of trial counsel, that labelled Appellant as "the shooter" and appellate counsel fails to argue the prejudicial impact of that video on direct appeal, appellant is denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

(ECF #1 at PageID 5, 7, 9, 11).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Johnson's habeas petition. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" so AEDPA acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Habeas courts review the last-explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991).

Accordingly, habeas relief cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court

6

of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

For the purposes of § 2254(d)(1), "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state-court decision is "contrary" to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Id.* at 405. The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Id.* A state court does not act contrary to Supreme Court precedent when the precedent of the Supreme Court is ambiguous or nonexistent. *See Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision involves an "unreasonable application" of Supreme Court precedent if (1) the state court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the state prisoner's case or (2) the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. A state-court decision must be "objectively unreasonable" to have unreasonably applied Supreme Court precedent which requires more than the decision being "erroneous" or "incorrect." *See id.* at 409-11. "It bears repeating that even a

7

strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), a state court's factual determinations stand unless they too are objectively unreasonable in light of the evidence presented in state court. *See Harrington*, 562 U.S. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18. Under AEDPA, "a determination of a factual issue made by a state court shall be presumed to be correct" unless the petitioner offers clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2554(e)(1).

Comity principles also require federal courts to defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including exhaustion of state remedies and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *Daniels v. United States*, 532 U.S. 374, 381 (2001). Put simply, federal habeas review is limited to federal claims that a state court decided on the merits. Claims there were not evaluated on the merits, either because they were never presented to the state courts (*i.e.*, they are unexhausted) or because they were not properly presented to the state courts (*i.e.*, they are procedurally defaulted), are generally not reviewable by a federal habeas court. *See Bonnell v. Mitchel*, 301 F.Supp.2d 698, 722 (N.D. Ohio Feb. 4, 2004).

**State-law Claims Not Cognizable on Federal Habeas Review**. Federal habeas review is available only for claims that "challenge the legality of [the petitioner's] custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Put another way, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F.App'x 575, 582 (6th Cir. 2010); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial.") (quotation omitted); *Engle*, 456 U.S. at 121 n.21 ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted).

Federal habeas review is generally not available to decide whether a state court complied with state law or state procedural requirements. *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). A federal habeas court "does not function as another state appellate court to review a state court's interpretation of its own law or procedure." *Id.* Instead, a federal habeas court is bound by "[a] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

A petitioner cannot justify habeas relief by simply asserting that a state-law error violates the federal constitution. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010). But habeas relief may be available if an error of state law made the criminal process "fundamentally unfair." *Williams*, 460 F.3d at 816. "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). The habeas petitioner must show "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Id.*

**Procedural Default.** A federal habeas court may not review claims that have been procedurally defaulted under state law. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). There are two avenues by which a petitioner may procedurally default a claim. *Williams*, 460 F.3d at 806. One way a procedural default occurs is if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether that failure bars review of a habeas claim, courts in the Sixth Circuit ask four questions: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to meet that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an

10

adequate and independent state ground on which the state can bar review of the federal
constitutional claim; and (4) whether the petitioner can show cause for his failure to follow the
rule and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*,
785 F.2d 135, 138 (6th Cir. 1986).

The other way a claim can be procedurally defaulted is if a petitioner does not raise it in
state court and pursue it through the state's "ordinary appellate review procedures." *Williams*,
460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)). To have a habeas claim
considered on the merits, a petitioner must present that federal claim at "each and every level" of
the state courts. *See Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003). If a petitioner did
not first raise his federal habeas claim before the state courts and state law would no longer allow
the petitioner to raise the claim in state court, the claim is procedurally defaulted. *Williams*,
460 F.3d at 806.

**Excusing a Procedural Default.**  A procedural default is not the end of a habeas claim. A
petitioner can overcome a procedural bar by showing either (1) cause for the default and actual
prejudice because of the alleged violation of federal law or (2) not considering the claims will result
in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 749. Success here does not entitle
a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim (subject
to the standard of review above) when the claim would otherwise be procedurally defaulted. *See
Martinez v. Ryan*, 566 U.S. 1, 10 (2012); *see also Coleman*, 501 U.S. at 750.

Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome
procedural default. Rather, "the existence of cause for a procedural default must ordinarily turn on
whether the prisoner can show that some objective factor external to the defense impeded

11

counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Neither a petitioner's pro se status nor any ignorance of the law and procedural filing requirements are enough to show cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice. *Murray*, 477 U.S. at 494. Rather, the petitioner must show the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *Id*. There is no prejudice where the petitioner does not show a reasonable probability that the result of the proceeding would have been different. *Ambrose v. Booker*, 801 F.3d 567, 577-78 (6th Cir. 2015).

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750. A fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96. Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A valid actual innocence claim must be supported by new, reliable evidence that was not presented at trial and is "so strong a court cannot have confidence in the outcome of the petitioner's trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Such evidence can include exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence. *Id.* But this evidence "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

ANALYSIS

**A.      Procedural default of Grounds One and Two.**

**1.      Mr. Johnson procedurally defaulted Ground One by raising it in state court as a state statutory claim, not as a Sixth Amendment claim.**

The State argues Mr. Johnson procedurally defaulted Ground One because he did not present Ground One as a federal claim to the state courts, rather he presented solely a claim of state law. (ECF #6-1 at PageID 45-46). I agree that this claim is defaulted.

As mentioned above, federal habeas review is limited to federal claims decided on the merits by a state court. This requires a petitioner to present to both the state and federal courts "the same claim under the same theory." *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009). And the petitioner must make the state courts aware of the "federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

The substance of Ground One is that the trial court's decision not to instruct the jury on self-defense violated Mr. Johnson's Sixth Amendment right to a fair trial and his Fourteenth Amendment right to due process of law because he presented enough evidence to be entitled to that instruction. (*See* ECF #1 at PageID 5; ECF #7 at PageID 288-89). While Mr. Johnson presented this claim to the state courts under Ohio law, he did not make the state courts aware of any federal constitutional aspect of this argument.

Starting in his direct appeal to the Eighth District, Mr. Johnson did not mention either the Sixth or Fourteenth Amendments, argue either Amendment entitled him to a self-defense instruction, or cite any federal law. (*See* ECF #6-1 at PageID 91-94). Instead, Mr. Johnson's argument was based on Ohio Revised Code §§ 2901.05 and 2901.09, the state's self-defense statutes. (*See id.* at PageID 97-103). At various points, Mr. Johnson revealed the state-law nature of

13

his argument. (*See id.* at PageID 97-98, 103) ("Under Ohio law, a defendant is entitled to assert self-defense . . . This defense is statutory . . . The trial court did not follow current Ohio law on self-defense . . . Under newly revised [Revised Code §] 2901.09 . . . Ohio law no longer requires a person to retreat."). Faced with a claim framed solely under Ohio law, the Eighth District confined its analysis to Ohio law. (*See id.* at PageID 135-40).

Mr. Johnson kept his Ohio-law focus during his appeal to the Supreme Court of Ohio. The federal claims do not appear in his proposition of law. (*Id.* at PageID 171). His argument analyzed Revised Code § 2901.05 and the Eighth District's interpretation of that statute. (*Id.* at PageID 175-76). At no point in his direct appeal did Mr. Johnson make the state courts aware of any asserted federal basis of this claim.

Mr. Johnson first mentions federal law in his Rule 26(B) application, but this was not enough. There he argued his appellate counsel was ineffective for not arguing the Sixth Amendment issue. (*See id.* at PageID 192-93). But whether the refusal to instruct on self-defense violated the Sixth and Fourteenth Amendments is a different issue than whether Mr. Johnson's appellate counsel was ineffective for not arguing that claim on appeal. *See Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) (noting ineffective assistance and the underlying claim are "analytically distinct"). Thus, "a Rule 26(B) application based on ineffective assistance cannot function to preserve the underlying substantive claim." *Id.* Because Mr. Johnson never presented Ground One as a federal claim in the state courts, it is procedurally defaulted. *See Reese*, 541 U.S. at 29.

Mr. Johnson does not advance cause for his default in his Traverse; in fact, he does not address the issue at all. (*See* ECF #7). But his arguments on the merits might support cause for

14

default. Because Mr. Johnson is representing himself so his pleadings are entitled to a liberal construction, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), I address this potential argument. If the District Court determined Ground One has merit, then Mr. Johnson's ineffective-assistance claim could serve as cause to excuse the default of Ground One. *See Davie*, 547 F.3d at 312. But if the underlying Sixth Amendment claim has no merit, there is no cause because Mr. Johnson cannot demonstrate his counsel was ineffective for failing to raise a meritless claim on appeal. *See id.*

For Ground One to have merit, Mr. Johnson must show "the trial judge not only misread state law but also misread it so badly that it violated the Sixth and Fourteenth Amendments." *Keahey v. Marquis*, 978 F.3d 474, 478 (6th Cir. 2020). Doing so "is not easy because 'instructional errors of state law generally may not form the basis for federal habeas relief.'" *Id.* (quoting *Gilmore v. Taylor*, 508 U.S. 333, 344 (1993)). Even then, he must show the trial court's faulty interpretation was contrary to a Supreme Court decision. *See* 28 U.S.C. § 2254(d)(1). To do that, Mr. Johnson must show that the misreading of Ohio's self-defense law violated concrete Supreme Court holdings, not generalized principles. *See Keahey*, 978 F.3d at 478.

That last requirement dooms Mr. Johnson's claim because the Sixth Circuit held in *Keahey* "[n]o clearly established Supreme Court precedent gives an answer" to what specific amount of evidence would trigger a federal constitutional right to a state-law self-defense instruction. *See* 978 F.3d at 479-80. As mentioned above, a state court cannot act contrary to Supreme Court precedent when there is no precedent on the issue. *See Esparza*, 540 U.S. at 17 (per curiam). Mr. Johnson cites no case—let alone a case after the Sixth Circuit's 2020 decision in *Keahey*— establishing he has a federal constitutional right to a self-defense instruction based on the body of

15

evidence he presented at trial. (*See* ECF #7 at PageID 288-91) (citing cases from 1973 through 2002). Nor can I find such a case. Because Ground One has no merit, Mr. Johnson cannot rely on ineffective assistance of appellate counsel as cause for him not presenting it in state court.

I thus recommend the District Court **DISMISS** Ground One as procedurally defaulted.

**2.     Mr. Johnson procedurally defaulted Ground Two because he did not raise the issue in his application for reopening before the Eighth District.**

The State argues Ground Two, concerning ineffective assistance of appellate counsel, is procedurally defaulted because at varying times in state court, Mr. Johnson presented different reasons why his appellate counsel was ineffective. (*See* ECF #6 at PageID 46).

As discussed above, a petitioner must present his habeas claim at "each and every level" of the state courts to have the claim considered on the merits. *See Baston*, 282 F.Supp.2d at 661. A petitioner must give state courts a full opportunity to resolve any constitutional issues by invoking "one complete round" of the state's appellate review system. *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003). And a petitioner must present "the same claim under the same theory" to the state and federal courts at every level. *Wagner*, 581 F.3d at 417.

In Ground Two, Mr. Johnson argues "When Appellate counsel fails to raise the complete lack of evidence of the element of intent regarding a murder conviction, appellant is denied the effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution." (ECF #1 at PageID 7). He provided the following supporting facts:

> Appellate counsel failed to argue the state's failure to present any evidence of the required element of intent, cannot be seriously disputed. Thus, the question turned on several questions. First, whether intent is required to support a conviction for murder under R.C. 2903.02(A); Two, whether the lack of intent is clearly established on the face of the state court record; and three, whether appellant was prejudiced by appellate counsel's failure to address this issue on direct appeal.

While there was clear evidence that the initial fight involved Ms. Fowler, Mr. White, and Petitioner Johnson, the prosecution failed to introduce evidence, or even suggest that Johnson purposely caused the death of Ms. Fowler or that Johnson's actions showed the required *mens rea* element to support a murder conviction.

Due to appellate counsel's ineffectiveness, the recent decision under *State v. Messenger*, 2022-Ohio-4562 [216 N.E.3d 653 (Ohio 2022)] was not applied to this case. In *Messenger*, the Supreme Court of Ohio stated, "in a murder case, ***, the state's rebuttal of a defendant's claim of self-defense was not subject to review under the sufficiency of the evidence standard, instead R.C. 2901.05(B)(1) provides that the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense." *Id* at ¶13. Johnson asserts that had appellate counsel raised this issue, pursuant to *Messenger*, *supra*, the appellate court's review of his sufficiency of evidence would have been reversible error. Johnson states that since, the Ohio Court of Appeals failed to address the issue of intent, any Federal review must be de novo.

(ECF #1 at PageID 7-8).

This is a different ineffective-assistance claim from the claims raised in his Rule 26(B) application. There, alongside two other ineffective-assistance claims, Mr. Johnson argued his appellate counsel was ineffective for failing "to raise trial counsel's failure to seek jury instructions on the lesser included offense of manslaughter." (ECF #6-1 at PageID 193). In support of that claim, he relied on two Ohio cases for support that he was entitled to a lesser-included-offense instruction: *State v. Anglen*, No. 109049, 2020 WL 5949856 (Ohio Ct. App. Oct. 8, 2020), and *State v. Kidder*, 513 N.E.2d 311 (Ohio 1987). (*See* ECF #6-1 at PageID 193-96).

In his reply, Mr. Johnson confirms the nature of his claim: "Appellant's second Proposed Ground for Relief argues Appellate Counsel's failure to argue trial counsel's failure to seek [a] jury instruction [for] the lesser included offense of manslaughter." (ECF #6-1 at PageID 231). He does not mention *Messenger* in his application or reply at all. And he could not. *Messenger* was decided on December 21, 2022—three months after he filed his application and five days after his reply. (*Cf.* ECF #6-1 at PageID 189, 228).

17

When Mr. Johnson appealed the denial of his application to the Supreme Court of Ohio, he changed his claim to "When appellant [*sic*] counsel fails to raise the complete lack of evidence of the element of intent regarding a murder conviction, Appellant is denied the effective assistance of counsel." (*Id.* at PageID 251). There, Mr. Johnson first cites *Messenger.* (*Id.* at PageID 252). But Mr. Johnson was aware that a reader may wonder if his claim has changed and so he wrote:

> With respect to the second argument raised in the Application to Reopen Direct Appeal, although the proposed error was raised as an ineffective counsel claim for not seeking jury instructions on a lesser included offense of manslaughter, that entire argument was based on the complete failure of the State to present evidence of intent to support the murder conviction.

(*Id.* at PageID 252).

Mr. Johnson alleged two different errors by his appellate counsel: a failure to raise on appeal ineffective assistance of trial counsel for not seeking a lesser-included-offense instruction and a failure to raise on appeal that the State did not disprove he used force in self-defense. By presenting two different theories for Ground Two before the Eighth District and the Supreme Court of Ohio, Mr. Johnson did not pursue "one complete round" of Ohio's appellate review system on Ground Two. *See Caver*, 349 F.3d at 346. Thus, Ground Two is procedurally defaulted.

As discussed regarding Ground One, Mr. Johnson does not advance cause to excuse any default. Unlike Ground One, a potential claim of ineffective assistance is no help here because Ground Two is plainly meritless. Mr. Johnson argues his appellate counsel was ineffective because he did not argue the applicability of *Messenger*. (ECF #1 at PageID 7-8; ECF #7 at PageID 292). But the Supreme Court of Ohio decided *Messenger* on December 21, 2022, five months after the

Eighth District's decision on his direct appeal[2] (ECF #6-1 at PageID 132) and three months after

his appeal to the Supreme Court of Ohio (*id.* at PageID 150). Professional competence does not

require an attorney to divine the outcome of a case in the future and argue its applicability to a

court in the past. *See Strickland v. Washington*, 486 U.S. 668, 688 (1984) (to be deficient, an

attorney's performance must "[fall] below an objective standard of reasonableness.").

I thus recommend the District Court **DISMISS** Ground Two as procedurally defaulted.

**B.    Merits of Ground Three and Four**

    **1.    Ground Three lacks merit because appellate counsel cannot be ineffective for allegedly not raising an issue that was raised or for arguing a then-non-existent Supreme Court of Ohio case.**

In Ground Three, Mr. Johnson argues his appellate counsel was ineffective for not arguing

he was entitled to have a jury decide the issue of self-defense. (ECF #1 at PageID 9). According to

Mr. Johnson, his appellate counsel did not properly argue the self-defense instruction issue raised

in Ground One and "should have framed the argument as the trial judge usurping the jury's role

by making his own evaluation of the weight of the evidence and the credibility of the witnesses."

(ECF #7 at PageID 293). Had his appellate counsel done so, the argument goes, the Eighth District

would have used the correct standard of review under *Messenger*. (ECF #1 at PageID 9).

Ground Three is plainly meritless. Ground Three has two components: (1) appellate

counsel should have argued the trial court usurped the jury's role as factfinder, and (2) in doing so,

appellate counsel should have argued *Messenger* controlled. (*See* ECF #1 at PageID 9; ECF #7 at

---

[2]     There, Eighth District even noted the Tenth District's decision in *Messenger* was on appeal before the Supreme Court of Ohio and still pending by the time it decided Mr. Johnson's appeal. (ECF #6-1 at PageID 141 n.4).

PageID 293). The first component is factually incorrect and the second is logically impossible for the same reason discussed regarding Ground Two.

The two-part test in *Strickland* governs Mr. Johnson's ineffective-assistance-of-appellate-counsel claims. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (applying *Strickland* to appellate counsel). This standard requires the habeas petitioner establish (1) counsel's representation fell below an objective standard of reasonableness based on all the circumstances in the case, such that the attorney did not function as "counsel" guaranteed by the Sixth Amendment, and (2) counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88. To satisfy the deficiency prong, the habeas petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 668. And to satisfy the prejudice prong, the habeas petitioner must show "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome." *Id.* at 694.

First, Mr. Johnson's assertion in Ground Three that his appellate counsel should have argued the trial court usurped the jury's role as factfinder is factually incorrect. Contrary to that assertion, the Eighth District noted in rejecting Mr. Johnson's Rule 26(B) application that his appellate counsel *did argue* the trial court usurped the jury's role as the factfinder:

{¶10} However, appellate counsel directly addressed the issue by arguing that the trial court erred by failing to instruct the jury on self-defense. He incorporated the role of the jury in his argument: "Certainly the evidence was such that the question should have gone to the jury for its consideration." "The trial court's refusal to allow the question of self-defense to go to the jury for its consideration was error. The jury would have been free to accept or reject the defense, but never had the opportunity." "By refusing the self-defense instruction, the lower court failed to 'fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.'" Appellate counsel in the exercise of professional judgment was not ineffective for directly addressing the

issue as a failure to give a necessary jury instruction and emphasizing the role of the jury as part of the argument.

(ECF #6-1 at PageID 241) (quoting *id.* at PageID 99, 101, 102) (internal record citations omitted).

Appellate counsel's performance cannot be deficient for not raising an issue *when counsel actually raised it. See Payne v. Sloan*, No. 1:18-CV-302, 2020 WL 10357233, at *26 (N.D. Ohio Nov. 23, 2020), *report and recommendation adopted*, No. 1:18CV302, 2021 WL 2952842 (N.D. Ohio July 14, 2021). Moreover, because counsel *did* raise the jury-usurpation argument, Mr. Johnson cannot demonstrate as required there would have been any result other than that actually obtained. *See Strickland*, 466 U.S. at 694.

The second component—that his attorney should have argued the applicability of *Messenger*—is logically impossible. As discussed above for Ground Two, appellate counsel cannot be ineffective for not arguing *Messenger* because that case was not decided until five months after Mr. Johnson's appeal to the Eighth District (ECF #6-1 at PageID 132) and three months after his appeal to the Supreme Court of Ohio (*id.* at PageID 150). There is no "objective standard of reasonableness" that mandates a lawyer must divine the outcome of a case that had not yet been decided and argue its applicability to a court in the past. *See Strickland*, 466 U.S. at 688.

Nor can Mr. Johnson possibly show he was prejudiced. Even if counsel had been prescient and knew the eventual outcome of *Messenger*, the Eighth District stated on his direct appeal:

> *Although not relevant to this case* in which self-defense was not an affirmative defense considered at the trial, in *State v. Messenger*, 2021-Ohio-2044, 174 N.E.3d 425 (10th Dist.), the Tenth District concluded that "sufficiency of the evidence is not the proper framework to review whether the state proved the absence of self-defense." *Id.* ¶ 44-45. The Ohio Supreme Court accepted *Messenger* for review and has completed

oral arguments on the matter. *See Supreme Court of Ohio Case No. 2021-0944. The outcome of* Messenger *would not impact this case.*

(ECF #6-1 at PageID 141 n.4) (emphasis added). Mr. Johnson cannot demonstrate there would have been any a different outcome on appeal because the Eighth District already stated the outcome would be the same had *Messenger* been argued. *See Strickland*, 466 U.S. at 694.

I thus recommend the District Court **DENY** Ground Three as meritless.

### 2. Ground Four lacks merit because the Eighth District reasonably rejected the ineffective-assistance claim.

In Ground Four, Mr. Johnson argues he was denied effective assistance of counsel because appellate counsel did not argue on appeal that the trial court erroneously admitted over objection a video that labelled him the "shooter." (*See* ECF #1 at PageID 11). Both Mr. Johnson and the State agree the Eighth District's decision is entitled to AEDPA deference. (*See* ECF #6 at PageID 61; ECF #7 at PageID 296). The State argues the Eighth District reasonably rejected Mr. Johnson's ineffective-assistance claim. (ECF #7 at PageID 61, 63).

As noted earlier, AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell*, 543 U.S. at 455 (citation and quotation omitted). Accordingly, Mr. Johnson must demonstrate the Eighth District's adjudication of his ineffective-assistance claim either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." *See* 28 U.S.C. § 2254(d).

As noted in Ground Three, the two-part *Strickland* test is the clearly established federal law governing Mr. Johnson's ineffective-assistance claims. To reiterate, it requires a showing of

deficient performance by counsel and resulting prejudice to the defendant. *Strickland*, 466 U.S. at 687-88.

To satisfy the deficiency prong, the habeas petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 668. Because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. This is an extremely deferential standard, because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

To satisfy the prejudice prong, the habeas petitioner must show "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome." *Id.* at 694. The prejudice inquiry "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. *See Harrington*, 562 U.S. at 105. The standards created by *Strickland* and § 2254(d) are both highly deferential, *see Strickland*, 486 U.S. at 689; *Lindh v. Murphy,* 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly so." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). The *Strickland* standard is a general one, so the range of

23

reasonable applications is substantial. *Mirzayance*, 556 U.S. at 123. Additionally, unreasonableness under *Strickland* is different from unreasonableness under § 2254(d). *Harrington*, 562 U.S. at 105. When § 2254(d) applies, the question is not whether counsel's actions were reasonable. *Id.* Instead, the question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id.*

> The Eighth District adjudicated Ground Four as follows:
>
> {¶12} Johnson's final argument is that it was error to label him as the "shooter" in the synthesized video of the event. Multiple cameras in and around the bar captured the event from various angles. The state synthesized the videos into one approximately four-minute video showing the event as it occurred. The state labeled Johnson as the "shooter" in the video. Johnson argues that this unfairly prejudiced him in front of the jury. Although Johnson's trial counsel objected to the label, in his closing argument he acknowledged that the video shows Johnson shooting. Trial counsel argued that this video showed him shooting in a downward direction, thus, making it impossible for Johnson to be the killer, because the bullet that killed Fowler entered her in an upward trajectory. (Tr. 590-591.)
>
> {¶13} Johnson cites *Holbrook v. Flynn*, 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986), for the proposition that the test is whether there was an unacceptable risk of prejudice. In that case, the United States Supreme Court ruled that having extra uniformed officers in the courtroom was not inherently prejudicial as to deprive the defendant of a fair trial. So too in the present case, the truth that Johnson fired his gun and trial counsel's efforts to use the video and the other evidence to show that Johnson was not the killer did not deprive Johnson of a fair trial by labeling him as the "shooter." Following the admonition of the Supreme Court, this court rules that appellate counsel in the exercise of professional judgment could properly decline to make this argument.

(ECF #6-1 at PageID 243).

The Eighth District's decision was not unreasonable under the doubly deferential standard. Earlier in the decision, the Eighth District cited *Strickland* and discussed it and other cases applying it. (*Id.* at PageID 239-41). The Eighth District decided "appellate counsel in the exercise of professional judgment could properly decline to make this argument," which is not contrary to *Strickland*'s "strong presumption" that lawyers make significant decisions "in exercise of reasonable

professional judgment." *See* 466 U.S. at 689-90. As the *Strickland* standard is a general one where the range of reasonable applications is wide, *see Mirzayance*, 556 U.S. at 123, such a conclusion is not "contrary" to *Strickland* as it is not "diametrically different, opposite in character or nature, or mutually opposed" to *Strickland*. *See Williams*, 529 U.S. at 405.

Nor did the Eighth District unreasonably determine the facts around the unfair-prejudice claim. Mr. Johnson points to the dissenting judge[3] in his direct appeal who discusses the lack of clarity on the firefight outside the nightclub. (ECF #7 at PageID 294-95 (citing ECF #6-1 at PageID 144-46)). But it was uncontested that Mr. Johnson had shot his firearm that night so labelling him as at least a "shooter" was factually accurate.

The Eighth District was also not unreasonable in concluding Mr. Johnson's trial counsel had attempted to turn the video to his advantage to argue that because the video depicted Mr. Johnson shooting in a downward direction, it was impossible for him to have fired the fatal bullet because it entered in an upward trajectory. (ECF #6-2 at PageID 242). Because the video's identification also supported Mr. Johnson's theory that he did not fire the fatal shot, it was unlikely for Mr. Johnson to show he was materially prejudiced by the label to be successful on appeal.

Mr. Johnson has not shown that there is no reasonable argument that his appellate counsel satisfied *Strickland*'s deferential standard by not brining Ground Four on appeal. *See Harrington*, 562 U.S. at 105. The Eighth District reasonably determined the video's identification helped his

---

[3]  That judge, Judge Anita Laster Mays, was also on the panel that unanimously rejected Mr. Johnson's application to reopen the direct appeal. (ECF #6-1 at PageID 144, 243).

defense at trial and that counsel in turn reasonably determined an unfair-prejudice claim would be unlikely to overcome the deferential standard of review on appeal.

I thus recommend the District Court **DENY** Ground Four as meritless.

CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a COA and specifies the issues that can be raised on appeal. 28 U.S.C. §  2253(c). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court has determined a petitioner's constitutional claim to lack merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not needed to grant a COA. *Miller-El*, 537 U.S. at 337.

Mr. Johnson asks for a COA on the following issue:

> Whether the trial court improperly assumed the jury's role by making its own evaluation of the weight of the evidence and the credibility of the witnesses in deciding not to give the self-defense instruction, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

(ECF #7 at PageID 296). I note this is does not quite capture all of Ground One as Mr. Johnson also argued the trial court violated his Sixth Amendment right to a fair trial. (*See* ECF #1 at PageID

26

5; ECF #7 at PageID 288-89). As Mr. Johnson is representing himself, I liberally construe his request to include the Sixth Amendment issue. *Boag,* 454 U.S. at 365.

Mr. Johnson points to the fact the Eighth District divided on whether he was entitled to a self-defense instruction as requiring a COA. (*See* ECF #7 at PageID 296) (citing *Davidson v. Skipper,* No. 20-CV-13188, 2022 WL 4088177, at *7 (E.D. Mich. Sept. 6, 2022)). It is true that "'[w]hen a state appellate court is divided on the merits of the constitutional question, issuance of a [COA] should ordinarily be routine.'" *Davidson,* 2022 WL 4088177, at *7 (quoting *Jones v. Basinger,* 635 F.3d 1030, 1040 (7th Cir. 2011)). But that requires the state appellate court to divide on a *federal constitutional question. See United States ex rel. Scott v. Atchison,* No. 11 C 3442, 2012 WL 3234297, at *7 (N.D. Ill. Aug. 2, 2012) (denying a COA despite a dissenting opinion by an Illinois appellate judge because the dissenting opinion did not "reflect a disagreement 'on the merits of the constitutional question'" of ineffective assistance of counsel but disagreed on whether the petitioner made a threshold showing for postconviction relief under Illinois law) (quoting *Jones,* 635 F.3d at 1040). The Eighth District did not split on whether Mr. Johnson's Sixth or Fourteenth Amendment rights were violated because, as stated above, he never presented that issue to the Eighth District. Thus, *Davidson* does not apply here.

Moreover, jurists of reason would not find it debatable whether the Sixth or Fourteenth Amendments require a state-law self-defense instruction on a defendant making a particular showing of evidence. The Sixth Circuit has already settled the debate. *See Keahey,* 978 F.3d at 479-80 (noting "[n]o clearly established Supreme Court precedent gives an answer" to what specific amount of evidence would trigger a federal constitutional right to a state-law self-defense instruction). Even if there might be debate on the substance of Ground One, jurists of reason

27

would not debate whether Mr. Johnson procedurally defaulted the issue. I thus recommend the District Court **DENY** Mr. Johnson the requested COA for Ground One.

Jurists of reason would also not debate whether Mr. Johnson procedurally defaulted Ground Two nor debate the merits of Ground Three and Four. I thus recommend the District Court **DENY** Mr. Johnson a COA as to all other grounds of his petition.

## CONCLUSION AND RECOMMENDATION

For these reasons, I recommend the District Court **DISMISS** Grounds One and Two as procedurally defaulted, **DENY** Grounds Three and Four as meritless, and **DISMISS** the petition. I further recommend the District Court **DENY** Mr. Johnson's requested certificate of appealability on Ground One and **DENY** him a certificate of appealability on all other grounds.

Dated: March 28, 2025

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

A party must serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge within 14 days after being served with a copy of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). The district judge will review properly asserted objections de novo.

If a party does not file objections within the specified time, it may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific

and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).